UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 CR 376 |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| STEVEN FENZL and DOUGLAS RITTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Steven Fenzl ("Fenzl") and Douglas Ritter ("Ritter") (collectively, "Defendants") are

charged with conspiracy to commit mail and wire fraud, mail fraud, and wire fraud in violation of

18 U.S.C. §§ 1341, 1343, 1349. (R. 1, Indictment.) Presently before the Court is Fenzl's motion

to strike certain portions of the indictment pursuant to Federal Rule of Criminal Procedure 7(d).[1]

(R. 31, Fenzl's Mot.) For the following reasons, the motion is denied.

## BACKGROUND

Defendants are part-owners of Company U, an Illinois corporation engaged in the

business of refurbishment and repair of refuse disposal containers. (R. 1, Indictment ¶¶ 2-4.)

The government alleges that Defendants engaged in a scheme to defraud the City of Chicago (the

"City") of money and property related to bids submitted for, and the performance of a contract to

repair and refurbish the City's refuse disposal containers, Specification No. 17390A (the

---

[1] Ritter moved to join this motion the same day it was filed. (*See* R. 30, Ritter's Mot. to Adopt Co-Def.'s Pre-trial Mots.) The Court granted Ritter's motion on August 26, 2009. (R. 36, Minute Entry.)

"Contract"). (*See* R. 1, Indictment.) According to the indictment, in addition to submitting a bid for Company U, Defendants orchestrated the submission of "sham" bids by three other companies with "materially false and fraudulent" documents. (*Id.* ¶ 25.) In addition to the bid rigging scheme, the indictment also alleges that Defendants "fraudulently" obtained the Contract, in part, by certifying that Company U would subcontract for goods or services from a certified Minority Business Enterprise ("MBE") and a certified Women Business Enterprise ("WBE"), when in fact Defendants did not actually obtain such goods or services. (*Id.* ¶¶ 27, 52-64.)

Defendants argue that the portions of the indictment premised on violations related to subcontracting with a MBE and WBE under the Contract do not constitute "a cognizable scheme to defraud the City of 'money or property' under the federal [mail and wire] fraud statutes." (R. 31, Fenzl's Mot. ¶ 3.) As such, Defendants argue that pursuant to Rule 7(d), paragraphs 18(b), 19(b) and (c), 20, 23, 27, 52-64, and 70, should be stricken from the indictment as "prejudicial surplusage." (*Id.* ¶ 4.)

## ANALYSIS

Rule 7(d) provides that upon a defendant's motion, the court may strike surplusage from an indictment. Fed. R. Crim. P. 7(d). However, "[s]urplusage should not be stricken unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006) (internal quotations and citations omitted). Defendants argue that the portions of the indictment related to the MBE and WBE subcontracts "allege misrepresentations and deceptive conduct that *does not constitute a crime*." (R. 34, Fenzl's Mem. at 4 (emphasis in original).) As such, Defendants claim that the allegations are "plainly inflammatory and prejudicial" because "they create the unacceptable risk that the

jury may convict [D]efendants of devising a scheme that is not unlawful." (*Id.*)

The mail and wire fraud statutes require that the object of the fraud be a property right. *See Cleveland v. United States*, 531 U.S. 12, 26 (2000) ("[w]e conclude that § 1341 requires the object of the fraud to be 'property' in the victim's hands"); *McNally v. United States*, 483 U.S. 350, 360 (1987) ("we read § 1341 as limited in scope to the protection of property rights"); *see also United States v. Leahy*, 464 F.3d 773, 787 (7th Cir. 2006) ("The mail and wire fraud statutes require that the object of the fraud is money or property, rather than an intangible right."). Defendants argue that in this case, the City merely "lost the intangible benefits and objectives it sought to advance through its MBE/WBE [p]rogram, but suffered no pecuniary harm because it received the services it bargained for at the price it agreed to pay for such services." (R. 34, Fenzl's Mem. at 7-8.) Therefore, Defendants claim that while the alleged conduct "may have frustrated the City's policy objectives," the conduct "did not deprive the City of any money or other property" and thus does not constitute a crime under the statutes. (*Id.* at 8.)

Defendants' argument, however, has already been expressly rejected by the Seventh Circuit. In *Leahy*, the defendants were also charged with violations of mail and wire fraud statutes in connection with alleged fraudulent activity related to the City's MBE and WBE programs. 464 F.3d at 778-81. Like Defendants here, the defendants in *Leahy* claimed that the counts of the indictment related to fraud in connection with the MBE and WBE programs "charged an intangible rights scheme." *Id.* at 787. Specifically, the defendants argued that because the City "would ostensibly have paid the same for the provided [cleaning and janitorial] services," it had "lost no money" and thus no property right was involved. *Id.* The *Leahy* defendants claimed that "Chicago only lost a regulatory interest in controlling where its money

went." *Id.* The Seventh Circuit, however, did not accept this argument, stating that "[d]espite the defendants' contortions to squeeze this case into the intangible rights category, we cannot agree that it is such a case." *Id.* Rather, the *Leahy* court determined that the object of the fraud related to the MBE and WBE programs was money "taken under false pretenses from the [C]ity in its role as a purchaser of services." *Id.* at 788. Although the City received one of the services it contracted for, the cleaning and janitorial services, the court held that it "completely lost the other type of services for which it was paying [the defendants] -- services performed by an MBE or WBE . . . ." *Id.; see also id.* ("Chicago suffered a loss of money in that it paid for a service provided by an MBE or WBE that it did not receive . . . ."). Accordingly, the Seventh Circuit affirmed the district court's decision to reject the defendants' argument challenging the sufficiency of the indictment. *Id.* at 789.

Although Defendants in this case are "well aware" of the Seventh Circuit's decision in *Leahy*, they nevertheless argue that "[u]nder *McNally* and its progeny" the indictment is "insufficient" to sustain the charges. (R. 34, Fenzl's Mem. at 9-11.) In addition, Defendants argue that the City's interest in promoting and regulating the MBE/WBE programs is "purely regulatory" and therefore, pursuant to the Supreme Court's decision in *Cleveland*, does not constitute money or property under the statutes.[2] (*Id.* at 11-14.) Neither of Defendants'

---

[2] In their reply, Defendants also assert that the City's ordinance related to the MBE/WBE program is "a classic 'affirmative action' regulation, designed to favor minorities and women and disfavor white males." (R. 41, Fenzl's Reply at 2.) Accordingly, Defendants argue that the challenged paragraphs of the indictment should be stricken because they "might rest upon a purported violation of an unconstitutional [o]rdinance." (*Id.* at 3.) Although this Court considers this position futile, we need not bother addressing the merits of Defendants' argument as it has been waived. *See Carter v. Tennant Co.*, 383 F.3d 673, 678 (7th Cir. 2004) (new arguments raised for the first time in a reply brief are considered waived); *Axis Hospitality, Inc. v. Hanson*, 08 C 7212, 2010 U.S. Dist. LEXIS, at *13-14 n.7 (N.D. Ill. Feb. 1, 2010) (same).

arguments, however, are novel as the Seventh Circuit considered both in the *Leahy* decision.[3]

To begin, Defendants claim that their "primary argument [] - that *McNally* controls the outcome of this case - was not even discussed by the Seventh Circuit in *Leahy*." (*Id.* at 11.) However, even a cursory review of *Leahy* reveals that Defendants are mistaken. The Seventh Circuit cited *McNally* and was thus well aware of the decision when it held that the scheme involving the MBE/WBE programs implicated a property right. *See Leahy*, 464 F.3d at 787 (where the defendants argued "that the mail and wire fraud counts of the indictment charged an intangible rights scheme, which cannot survive under Supreme Court precedent like *McNally*"). Further, in *Cleveland*, the alleged scheme was based on defrauding the government out of a video poker license by making false statements on the license application. 531 U.S. at 15-17. The Supreme Court determined that this alleged conduct did not implicate the government's role as a property holder. *Id.* at 23-24. The Court held that even though the government had the right to choose to whom it would award a license, this was not a property right but an intangible right: the right to regulate. *Id.* The Seventh Circuit, however, determined that the City's interest in *Leahy* was not purely regulatory as it was in *Cleveland*, as the scheme "precisely and directly targeted Chicago's coffers and its position as a contracting party." *Id.* at 788; *see also id.* ("*Cleveland* addresses a situation in which defendant commits fraud against a governmental body acting as regulator; here the fraud was committed against Chicago as regulator and also against

---

[3] Indeed, Defendants expressly admit that the Seventh Circuit has already rejected the regulatory argument premised on *Cleveland*. (*See* R. 34, Fenzl's Mem. at n.2.)

the city as property holder.").[4]

In sum, although the crux of Defendants' argument is that *Leahy* was wrongly decided, this Court is bound to follow Seventh Circuit precedent where it has direct application in a case. *See Bingham v. New Berlin Sch. Dist.*, 550 F.3d 601, 605 (7th Cir. 2008) (citing *Hutto v. Davis*, 454 U.S. 370, 375 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent [] must be followed by the lower federal courts.")). Under *Leahy*, the portions of the indictment premised on violations related to subcontracting with an MBE or WBE constitute an unlawful scheme to defraud the City of money or property under the federal mail and wire fraud statutes. As such, the challenged paragraphs are relevant to the charge and are not inflammatory or prejudicial.

## CONCLUSION

For the reasons stated herein, Defendants' motion (R. 31) is denied.

Entered:

Judge Ruben Castillo
United States District Court

Dated: April 29, 2010

---

[4] Defendants also attempt to distinguish the instant case by arguing that in contrast to the defendants in *Leahy*, they are not alleged to have fraudulently obtained an MBE or WBE certification from the City. (*See* R. 34, Fenzl's Mem. at 9-10.) This distinction, however, is of no consequence. The indictment alleges that Defendants certified that they would subcontract for goods or services from certified minority and women businesses when in fact Defendants did not actually obtain such goods or services. (*See* R. 1, Indictment ¶¶ 27, 52-64.) Therefore, even if Defendants did not obtain a fraudulent certification, they are still alleged to have engaged in fraud related to the MBE and WBE programs.